UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MIQUELLE FOUNTAIN,

                              Plaintiff,

    - against -                                    **COMPLAINT**
                                                   **JURY TRIAL DEMANDED**

RED LOBSTER HOSPITALITY, LLC, and
JOSEPH YOFFEE.

                              Defendants.

---

## COMPLAINT

The Plaintiff, MIQUELLE FOUNTAIN, by her attorneys, Schlather, Stumbar, Parks & Salk, LLP, as and for their Complaint, allege:

### PARTIES

1.     At all pertinent times herein, Plaintiff Miquelle Fountain is citizen of the United States and resident of the City of Elmira, County of Chemung, State of New York.

2.     Upon information and belief, at all times relevant herein, Defendant Red Lobster Hospitality, LLC ("Red Lobster" or "Defendant Red Lobster") is a foreign limited liability company duly organized and existing in the State of Delaware.   Red Lobster Hospitality, LLC is headquartered in Orlando, Florida.  Defendant Red Lobster is duly authorized to conduct business in the State of New York.

3.     At all times hereinafter mentioned, Red Lobster Hospitality, LLC did business as "Red Lobster."

4.     Red Lobster Hospitality LLC, owned, operated, and managed a Red Lobster restaurant in Elmira, New York located at 3328 Chambers Road S., Horseheads, NY 14845 ("Elmira Red Lobster").  By owning, operating and managing the Elmira restaurant, Red Lobster has been doing business in Chemung County, State of New York.

5.     Red Lobster Hospitality LLC, owned, operated, and managed a Red Lobster restaurant in Buffalo, New York located 4010 Maple Road, Amherst, NY 14226 ("Buffalo Red Lobster").  By owning, operating and managing the Buffalo restaurant, Red Lobster has been doing business in the State of New York.

6.      Red Lobster is an employer within the meaning of 42 U.S.C. § 2000e-(b), New York State Executive Law § 292, and related provisions of law.

7.      At all pertinent times herein, Joseph Yoffee (hereinafter "Defendant Yoffee") was the Director of Operations at Red Lobster for the Elmira Red Lobster.

8.      Defendant Yoffee was Plaintiff's supervisor at the Elmira Red Lobster.

9.      Upon information and belief, Defendant Yoffee resides at 106 E Morris Avenue, Buffalo, New York 14214.

## JURISDICTION

10.      The County of Chemung, wherein Plaintiff resides and wherein Red Lobster does business, and wherein a substantial part of the events, acts or omissions giving rise to the claim occurred, is within the jurisdiction of the United States District Court, Western District of New York.  Accordingly, venue is proper under 28 U.S.C. § 1391(b)(2).

11.      This court has original jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States.

12.      This Court has supplemental jurisdiction over all state common law claims pursuant to 28 U.S.C. § 1367 and related provisions of law.

13.      Processing the complaint will not advance New York State's human rights goals inasmuch as the matter is litigated in federal court, the forum in which all the issues concerning the question of race discrimination and sex discrimination can be resolved.

14.      On or about April 3, 2020, Plaintiff properly filed a complaint alleging race discrimination, sex discrimination, hostile work environment, harassment, and retaliation jointly with the Division of Human Rights (DHR) and the U.S. Equal Employment Opportunity Commission (EEOC).  The DHR found probable cause on or about October 9, 2020.  On May 18, 2021, Plaintiff requested that the DHR dismiss the complaint for administrative convenience pursuant to Executive Law § 297(9) so that Plaintiff could file this instant lawsuit.   The EEOC issued the Notice of Right to Sue on June 9, 2021, attached hereto as **Exhibit 1**.  Pursuant to this notice, and within 90 days of receiving the same, Plaintiff is timely and properly filing this action.

## BACKGROUND

15.      Plaintiff Fountain is a black woman and a member of a protected group.

16.      Defendant Red Lobster is an international seafood restaurant company that employs nearly 62,000 employees[1] across its 719 locations.

---

[1] The term "employee" herein refers to crew members and managers.

17.     Red Lobster has approximately 96 restaurants in its Northeast division.  The Northeast division oversees the Elmira Red Lobster.

18.     Plaintiff Fountain was employed with Defendant Red Lobster for approximately thirteen years.

19.     In 2009, Plaintiff Fountain was first employed by Defendant Red Lobster as a server at Red Lobster's 416 Commerce Center Drive, Jacksonville, FL 32225, location.

20.     In 2014, Plaintiff Fountain was transferred and promoted to manager at Red Lobster's 6850 Telegraph Road, Dearborn Heights MI, 48127, location ("Michigan Red Lobster").

21.     In 2016, Plaintiff Fountain was transferred to Red Lobster's 4010 Maple Road, Amherst, NY 14226 ("Buffalo Red Lobster").

22.     On or around January of 2017, Red Lobster promoted Plaintiff Fountain to General Manager and transferred her to 3328 Chambers Road S., Horseheads, NY 14845 ("Elmira Red Lobster").

23.     While working as the General Manager at the Elmira Red Lobster, Plaintiff Fountain reported directly to the Director of Operations, Defendant Yoffee.

24.     Defendant Yoffee was responsible for overseeing nine restaurants in the Buffalo region, including the Buffalo Red Lobster and the Elmira Red Lobster.

25.     Plaintiff Fountain was an exemplary employee throughout her thirteen years at Red Lobster, with an unblemished work record.

26.     Throughout the course of Plaintiff's career with Defendant Red Lobster, Defendants subjected Plaintiff to discrimination on the bases of race and sex.

27.     Plaintiff Fountain experienced discriminatory conduct through racist and sexist harassment that began at the start of Plaintiff's employment and continued without interruption until January 9, 2020, when Plaintiff was wrongfully terminated.

28.     Plaintiff Fountain repeatedly reported the discrimination to Defendants. Defendants took no action.

29.     On or around January 4, 2020, Defendant Red Lobster received an anonymous email crafted by, upon information and belief, Red Lobster employees and former employees as part of a discriminatory campaign to harass and terminate Plaintiff.

30.     Defendant Red Lobster conducted a sham investigation into Plaintiff.

31.     Plaintiff was given no legitimate opportunity to respond to the allegations against her, contrary to Defendant Red Lobster protocol and practices as it pertained to white male counterparts (*see* ¶¶ 135-140).

32.     Plaintiff Fountain reported to Defendants that she believed that the allegations against her were part of a campaign to terminate her because employees did not want to work for a black woman.

33.     Plaintiff was wrongfully terminated on January 9, 2020.

## FACTUAL BACKGROUND

### *Plaintiff Fountain Experienced Continuing Discrimination at the Michigan Red Lobster.*

34.     While employed at the Michigan Red Lobster, Plaintiff Fountain experienced continuing harassment on the basis of her race and sex.

35.     In 2014 Plaintiff Fountain's then manager (white male) requested Plaintiff's termination, upon information and belief, because she was a black woman.

36.     In 2015, that same manager (white male) said "no wonder you all have big butts, you put meat in your vegetables."

37.     In 2015, that same white male, who had since become General Manager, said, "don't you ever come in this restaurant again with braids—this isn't Africa."

38.     In 2017, after Plaintiff Fountain was transferred to the Elmira Red Lobster, she contacted her former Michigan General Manager (white female) regarding her ServSafe Certificate.[2] That General Manager disparagingly said, "I am sick of hearing about you. I will never care for your people the way you did."

### *Plaintiff Fountain Experienced Continuing Discrimination at the Buffalo Red Lobster*

39.     In 2016, Plaintiff Fountain was promoted to manager and transferred to the Buffalo Red Lobster.

---

[2] ServSafe Food Manager Certification is an accredited program training individuals on standards and safety regarding the work environment in the restaurant/service industry.  The purpose of the certification is to ensure that all food service workers understand food safety and ensure that food and beverages comply with federal and state law.

40.     Managers are responsible for leading the restaurant operations through a team of crew members[3] under the supervision of a General Manager.

41.     Plaintiff Fountain was promoted to manager because of her exceptional work performance. Upon information and belief, she received excellent evaluations as evidenced by the promotion.

42.     Plaintiff Fountain was the first black manager, and the first black female manager, at the Buffalo Red Lobster in its approximately thirty-year history.

43.     While working in the Buffalo Red Lobster, Plaintiff Fountain faced continual racist and sexist aggressions, hostility, and harassment. For instance:

    a. A swastika was repeatedly carved into the women's restroom wall where the perpetrator knew Plaintiff would encounter it.[4] The swastika was removed and appeared again quickly thereafter.  Plaintiff reported the swastika to the General Manager who merely said it was "a shame" and took no further action.

    b. White servers refused to serve black customers.

    c. White customers demanded to speak only with white managers.

    d. White customers refused to believe that Plaintiff was the manager because she was a black woman.

    e. Numerous employees and customers called Plaintiff "colored."

44.     Plaintiff Fountain informed Red Lobster leadership after each of these reoccurring incidents and Defendant Red Lobster refused to investigate or hold anyone accountable.

### Plaintiff Fountain Experienced Continuing Discrimination at the Elmira Red Lobster

45.     On or around January of 2017, Defendant Red Lobster promoted Plaintiff to General Manager and transferred her to the Elmira Red Lobster.

46.     A General Manager is responsible for leading restaurant operations through a team of managers and crew members[5] while meeting profit targets and cultivating positive customer experience.

47.     Plaintiff Fountain was promoted to General Manager because of her exceptional work performance. Upon information and belief, she received excellent evaluations as evidenced by the promotion only a year after becoming manager.

---

[3] Crew members include servers, bussers, cooks, and hosts.
[4] Plaintiff was required to check restrooms in the beginning of her shift and the swastika only appeared on days she opened the restaurant.
[5] Crew members include servers, bussers, cooks, and hosts.

48.     As General Manager, Plaintiff Fountain reported directly to the Director of Operations, Defendant Yoffee.

49.     At all pertinent times herein, upon information and belief, Plaintiff Fountain was one of only five black female General Manager in all of Red Lobster's 96 Northeast locations. Plaintiff Fountain was the only black General Manager located outside of New Jersey and New York City.

50.     Plaintiff Fountain was the first black General Manager, and first black female General Manager, at the Elmira Red Lobster in its thirty-year history.

51.     Upon information and belief, prior to Plaintiff Fountain's transfer, the Elmira Red Lobster never had any person of color in any managerial position.

52.     When Plaintiff Fountain began working at the Elmira Red Lobster there were approximately 86 employees, 98% white, 2% black.

53.     Defendant Red Lobster transferred Plaintiff to Elmira, New York, knowing full well that its restaurant faced significant financial hurdles.

54.     Upon information and belief, Defendant Red Lobster's Vice President of Operations for the Northeast, Dennis Garside, intended on closing the Elmira Red Lobster when Defendant transferred Plaintiff Fountain to that location.

55.     Mr. Garside even vowed to never return to visit the Elmira Red Lobster. According to him and Defendant Yoffee, the Elmira Red Lobster was the "shit hole of the Northeast."

56.     Shortly after Plaintiff's transfer in 2017, black employees from the Michigan Red Lobster contacted Plaintiff regarding discrimination they were facing at the hands of a white female General Manager (*see* ¶ 38). For instance, that General Manager said, "I'm going to whip that trick" in response to a black server making a mistake.

57.     Plaintiff Fountain immediately reported this information to her supervisor, Defendant Yoffee. Plaintiff specifically told Defendant Yoffee that she wanted to report the discrimination to Michigan's Director of Operations but did not want to overstep boundaries and asked for Defendant Yoffee's approval first.

58.     Defendant Yoffee actively discouraged Plaintiff from reporting the discriminatory conduct and told Plaintiff to focus on the Elmira restaurant. Upon information and belief, no action was taken.

59.     On Plaintiff Fountain's first day at the Elmira Red Lobster Plaintiff introduced herself to a dishwasher and extended her hand. The dishwasher refused to shake her hand and stated he was putting in his two weeks' notice because "me and your kind do not get along."

60.     During Plaintiff Fountain's first week of employment, she overhead employees plotting for her termination by May 10, 2017, because, upon information and belief, they did not like working for a black woman.

61.     One white male manager was particularly upset that he was working for a black woman, and texted other crew members, "don't worry, she won't last long."

62.     Defendant Yoffee was aware of the text messages and plot, confronted the manager, but took no further action.

63.     The daily harassment and hostility was so severe that Plaintiff Fountain reached out to her former Director at the Buffalo Red Lobster (white male) asking why Defendant Red Lobster placed her in such a hostile and discriminatory environment. He replied that he "knew she could handle it."

64.     The discriminatory harassment continued.

65.     A white male employee continually stated he was "not taking orders from a black bitch" behind Plaintiff's back.  Plaintiff confronted the employee, but he denied the statements.

66.     A white male cook told Plaintiff Fountain to "cook the fucking food yourself, cunt."

67.     In 2017, a white male employee showcased large confederate flags on his vehicle. He would purposefully park next to Plaintiff Fountain to intimidate and harass her.

68.     When customers complained about the confederate flag, Plaintiff Fountain asked Defendant Yoffee for guidance.  Defendant Yoffee stated that there was nothing he or Defendant Red Lobster could do.

69.     Upon information and belief, in 2017, Defendant Red Lobster employees created a private Facebook group where they posted harassing comments about Plaintiff Fountain. Upon information and belief, some of those comments were racist and sexist.  Specifically, a white male employee with the word "redneck" tattooed on his neck harassed Plaintiff on social media.

70.     Plaintiff received constant pushback from managers and staff throughout her tenure because many refused to work for a black woman.

71.     In 2018, a white female employee refused to listen to any of Plaintiff's directives because, upon information and belief, Plaintiff was a black woman.  This employee would consistently escalate simple issues to senior leadership.  This employee repeatedly commented about Plaintiff's appearance as a black woman. Plaintiff reported this to Defendant Yoffee. Defendants took no action.

72.     From 2018 through 2019, a white female employee consistently reported frivolous complaints to Defendant Yoffee regarding menial restaurant operations because, upon information and belief, she did not want to work for a black female General Manager.

7

73.     In or around the summer of 2019, Plaintiff Fountain asked a white male employee to turn his music down while he was in the restaurant. He told Plaintiff that she only wanted the music turned down because it was not "rap" music.  Plaintiff explained to this employee that those statements were prejudicial. That employee screamed at Plaintiff and slammed his hands into the restaurant wall.  Plaintiff reported this incident to Defendant Yoffee. Defendants took no action.

74.     In the summer of 2019, white male employees verbally assaulted one of the only black female employees because of her race, sex, and sexual orientation. White male employees called her a "dyke" and "bulldager" to her face.  Various restaurant cooks plotted for her termination stating, "don't worry, she won't last long here, she's black."  The harassed employee eventually resigned.  After her resignation, that employee informed Plaintiff about these incidents and further warned Plaintiff to watch her back.

75.     In the summer of 2019, a white male employee referred to black people as the "n" on multiple occasions in the restaurant. In addition, the same white male employee posted offensive material on a black female employee's social media page, stalked the black female employee, assaulted her, and made sexist comments.

76.     Once these offenses were reported to Plaintiff, she immediately informed Defendant Yoffee.  Per Defendant Yoffee's instructions, this white male employee was only subject to a performance disciplinary action[6] and was not terminated. Shortly thereafter, that white male employee violated the terms of his performance disciplinary action and Plaintiff terminated him.

77.     In the fall of 2019, a white male bartender referred to Plaintiff as "colored." Specifically, he stated, "you see, I don't have any problems with you and you are colored." Plaintiff replied "…you can't say 'colored.'" He said, "Why, I thought that's proper…I thought that's what you are called."[7]

78.     From 2017 through 2019, a white female employee continually threatened Plaintiff Fountain stating, "I'm a redneck, Miquelle, just remember that."

79.     Throughout her time at the Elmira Red Lobster, employees repeatedly stated that Plaintiff Fountain was "from the hood."

80.     White employees told Plaintiff Fountain she was "intimidating." When Plaintiff followed up to determine what those employees considered intimidating, none of the employees could provide any rationale.  Upon information and belief, it was because she was a black woman.

81.     The characterization of Plaintiff Fountain as intimidating exemplified employees' unwillingness to work for a black woman.

---

[6] The performance disciplinary action is, in essence, a behavioral contract.
[7] The term "colored" is derogatory and offensive, rooted in painful segregationist history.  Such a term is a relic of the Jim Crow era.

82.     In the summer of 2019, Plaintiff Fountain caught one of her subordinate managers (white male) in the restaurant at 6:00 AM in violation of Defendant Red Lobster's security policy. Plaintiff confronted him about the violation but that manager, again, disregarded Plaintiff and protocol. Plaintiff informed Defendant Yoffee of the breach as it is a terminable offense. Defendant Yoffee stated that he did not think it was worth losing a manager over this violation. Plaintiff responded that she was obligated to report this manger's behavior because it was a terminable offense.

83.     In the summer of 2019, that same subordinate manager removed chemicals from the proper storage location.  Plaintiff addressed this with the manager and another employee, stating that the chemicals must be locked up pursuant to safety protocol. The manager refused to move the chemicals and blatantly disregarded instructions. Plaintiff, again, addressed this with the manager, and he grudgingly completed the task.

84.     In the fall/winter of 2019, the same manager was intentionally sabotaging truck orders by underordering food for the restaurant. Consequently, Plaintiff Fountain received almost daily complaints from her staff that the restaurant was low on essential items.  Plaintiff was forced to travel to various other Red Lobster locations to properly stock the restaurant.

85.     In December of 2019 and on January 7, 2020, Plaintiff informed Defendant Yoffee that she suspected this manager was sabotaging orders because that manager did not want to work for a black woman. Upon information and belief, Defendants took no further action.

86.     In the winter of 2019, that same manager was being investigated for fraternization. Upon information and belief, he is now the General Manager at the Elmira Red Lobster.

87.     In November of 2019, Red Lobster's Corporate office received bizarre customer complaints about Plaintiff Fountain.  These complaints used very specific restaurant language that was exclusively used amongst Red Lobster employees.  Defendant Yoffee quickly determined that the "customer complaints" were written internally by employees, though, upon information and belief, he was unable to determine the perpetrator.

88.     Defendant Yoffee asked Plaintiff "who was out to get her."  Plaintiff inquired with managers but could not conclusively determine the perpetrator(s).  Defendants took no further action.

### *Red Lobster Customers Continuously Discriminated Against Plaintiff Fountain*

89.     Throughout Plaintiff Fountain's employment at the Elmira Red Lobster employees refused to serve black customers.

90.     Throughout Plaintiff Fountain's employment at the Elmira Red Lobster, customers repeatedly made sexist and racist comments to Plaintiff.

91.     White customers routinely refused to believe that Plaintiff Fountain was the General Manager because she was a black woman.

92.     In the summer of 2019, a customer shooed Plaintiff Fountain away and asked for the manager, stating that Plaintiff could not be the manager because, "Red Lobster didn't hire colored managers."

93.     In the summer of 2019, a guest refused to pay for a meal and asked for the manager. When Plaintiff Fountain approached that customer said she would have never asked for a manager if she knew "your kind" was coming. That customer wrote "Trump for president" on the receipt.

94.     In the summer of 2019, a customer asked Plaintiff Fountain if she was the manager. When Plaintiff affirmed, that customer said, "you have got to be kidding me, I never saw a black manager before" and that it was a "shame."

95.     A white male guest who frequented the restaurant always called Plaintiff Fountain "colored." He would specifically ask for "the colored girl."  Plaintiff informed that customer that he could not call her colored, but he continued to do so anyway.

96.     In December of 2019 a customer asked to speak to the manager and refused to talk to Plaintiff Fountain because she was a black woman.  That customer insisted on talking to a white male manager only. Plaintiff informed Defendant Yoffee of this incident.

97.     Plaintiff continually informed her superiors, and specifically Defendant Yoffee, of the sexism and racism she (and her staff) experienced during their meetings, via text message exchanges, and phone calls. No actions were ever taken.

***Defendants Failed to Investigate Plaintiff Fountain's Complaints of Continuing Discrimination While Spearheading a Sham Investigation Against her Orchestrated by Defendant Employees***

98.     Plaintiff was forced to endure a hostile work environment on a daily basis, such that the environment was pervaded by discriminatory animus, harassment, abusive commentary, on the basis of her race and sex.

99.     Though Plaintiff Fountain repeatedly reported the discrimination to management, no actions were taken.  Plaintiff attempted to persevere in the face of discrimination.

100.    Upon information and belief, throughout Plaintiff Fountain's career with Red Lobster, Defendant Red Lobster never alleged dissatisfaction with Plaintiff's performance.  To the contrary, Red Lobster lauded Plaintiff Fountain's managerial skills and successes.

101.    Throughout Plaintiff's tenure as General Manager she meticulously ensured that she followed all Red Lobster policies and procedures and sought guidance from supervisors when there were gaps in policies/procedures.

102.    While Plaintiff was General Manager, Defendant Red Lobster explicitly encouraged General Managers to boost sales and grow guest counts through a variety of avenues, including encouraging private parties and catering sales.

103.    Pursuant to this objective, Plaintiff Fountain launched a successful "Red Lobster Lounge" concept, a space that was available for customers to rent out for parties and events.

104.    Red Lobster's Vice President of Operations for the Northeast, Dennis Garside, commended Plaintiff Fountain for "thinking differently" and boosting sales via the Red Lobster Lounge.

105.    Defendant Yoffee fully endorsed and supported the Red Lobster Lounge.

106.    While Plaintiff was General Manager at the Elmira Red Lobster, she grew sales and saved the restaurant from closing.

107.    While Plaintiff was General Manager at the Elmira Red Lobster, she salvaged the restaurant's performance and reputation.  Red Lobster ranks each of Red Lobster's 706 restaurants for performance ("1" being the restaurant with the best performance reputation). Any restaurant ranked with a number higher than 360 was considered the bottom quartile of the company.  When Plaintiff took over Elmira Red Lobster, it ranked 688.  During Plaintiff's tenure, the Elmira Red Lobster reached as high as 70 (top 10% of the company) and Plaintiff even received a congratulations email from the CEO of Red Lobster.

108.    On or around January 4, 2020, Dennis Garside, received an anonymous email alleging that Plaintiff Fountain engaged in various misconduct.  This email contained pictures.

109.    Upon information and belief, the anonymous email was written by Elmira Red Lobster employees and former employees as part of a discriminatory campaign to harass and terminate Plaintiff Fountain.

110.    After the anonymous email was sent to Corporate, one employee texted other employees "it's going down," referring to Red Lobster terminating Plaintiff.

111.    Red Lobster policy dictates that employee complaints to Corporate must be handled confidentially and that all persons involved, including complainants, witnesses, and alleged perpetrators, are entitled to a fair and impartial investigation.

112.    Red Lobster policy dictates that disciplinary and employment decisions are made after a complete evaluation of the facts based on the investigative information, in addition to evaluating the restaurant/region practices, past precedent, and Red Lobster policies and/or guidance.

113.    Upon information and belief, Red Lobster's Employee Relations division is designed, in part, to investigate employee complaints.

114.    Upon information and belief, Employee Relations was not involved in the investigation of the anonymous email.

115.    Instead, Defendant Yoffee initiated the inquiry. Defendant Yoffee should not have led such an investigation since he was directly implicated in the alleged misconduct.

116.    On or about January 7, 2020, Defendant Yoffee spoke with Plaintiff Fountain about the anonymous email.  Plaintiff was unaware of any allegations against her up until this point.

117.    Plaintiff Fountain was not allowed to review alleged evidence against her nor the anonymous email, except for a few attached photographs.

118.    During that conversation with Defendant Yoffee, Plaintiff Fountain reiterated that she believed employees were attempting to sabotage her career.

119.    Defendant Yoffee was aware that employees had previously attempted to sabotage Plaintiff Fountain and were vying for Plaintiff's termination because they did not want to work for a black woman (*see e.g.* ¶ 62; ¶ 88).

120.    Defendant Yoffee told Plaintiff to "stay away from the restaurant for a few days. I will call you."

121.    Immediately following the conversation, Plaintiff texted Defendant Yoffee stating that the photographs attached to the anonymous email only depicted black customers and employees, and that she believed the anonymous email was racially motivated.

122.    Defendant Yoffee did not respond.

123.    On that very day, January 7, 2020, Defendant Yoffee sent the Region (9 restaurant locations) an email acknowledging the successful leadership and growth Plaintiff Fountain and her team maintained under her leadership.

124.    Defendant Yoffee and Red Lobster failed to conduct a legitimate investigation.

125.    As part of the sham investigation, Defendant Yoffee interviewed a select number of staff members, while neglecting to interview employees who had direct knowledge of the veracity of the allegations.

126.    Defendant Yoffee threatened a bartender's job and directed him to lie about Plaintiff Fountain's alleged misconduct during the "investigation."

127.    The purported investigation was conducted in bad faith.

128.    A legitimate investigation would have revealed that there was no reliable, credible evidence to support the allegations.

129.    A legitimate investigation would have revealed that the allegations lodged against Plaintiff were part of a campaign by Red Lobster employees to intimidate and harass Plaintiff on account that they did not want to work for a black woman.

130.    On January 9, 2020, Plaintiff was terminated without the opportunity to fully respond to any allegations, in direct violation of Red Lobster's disciplinary policy.

131.    Notably, Defendant Red Lobster never investigated Plaintiff Fountain's innumerable complaints about the hostile work environment, yet readily investigated Plaintiff Fountain while knowing full well employees were vying for her termination.

132.    Defendant Red Lobster's sham investigation was an effort to terminate her in retaliation for her repeatedly reporting conditions.

133.    Further, Defendant Red Lobster terminated Plaintiff because she reported that the allegations against her were motivated by racial and sex-based animus.

134.    The treatment of Plaintiff during the "investigation" and up to her termination is in vast contrast with that of other white male employees.

135.    While Plaintiff was General Manager a white male manager was investigated for fraternization and free alcohol distribution to employees after business hours.  After the evidence was gathered, Defendant Yoffee and Plaintiff met with this employee in order to give him an opportunity to review and respond accordingly.

136.    Defendant Yoffee showed that employee each piece of evidence, page by page, and allowed him to provide an explanation.  That employee did not offer any legitimate explanation. Instead of termination, Defendant Yoffee offered him an opportunity to resign to protect future job prospects.

137.    Upon information and belief, a white male General Manager at a Red Lobster in Greece, New York, was investigated for fraternization and possessing sexually explicit photos of female employees. Defendant Yoffee presented that individual with evidence of the violations to give that employee an opportunity to defend or deny.

138.    Upon information and belief, that employee offered no legitimate excuses and was offered a resignation instead of termination to protect future job prospects.

139.    A white male manager at the Elmira Red Lobster was investigated for fraternization and drug use.  That individual admitted to the violations and was offered a demotion and relocation by Defendant Yoffee.

140.    A white male manager in Henrietta, New York, was investigated for inappropriate foul language, demeaning women, anger issues, and negative pushback towards a female General Manager and female employees.

141.    Upon information and belief, Defendant Yoffee collected evidence and presented such to that manager and gave him an opportunity to respond.  Defendant Yoffee specifically asked that manager how he could better support him and allowed that manager to resign instead of face termination.

142.    Plaintiff was given no opportunities to review the allegations against her, present facts, or defend herself.

143.    Plaintiff was not presented with an alternative to termination.

### Defendant Red Lobster Had No Legitimate Reason to Terminate Plaintiff and The True Reason for Her Termination was Pretextual Racist/Sexist Animus

144.    Though Plaintiff Fountain repeatedly requested the basis for the termination, Defendants refused to reveal the purported rationale.

145.    Some of Plaintiff's employees and former employees told Plaintiff they believed she was terminated because she was a black woman.

146.    Plaintiff Fountain only discovered purported reasons for her termination through Department of Labor and Division of Human Rights proceedings.

147.    Red Lobster proffered inconsistent and illegitimate reasons to support the termination during the Department of Labor and Division of Human Rights proceedings.

148.    Had Defendants conducted a legitimate investigation following the anonymous email, it would have revealed that there was no evidence to substantiate any of the claims.

149.    The anonymous email and Defendant Red Lobster alleged Plaintiff was misappropriating funds by failing to properly categorize decoration purchases for the restaurant.

a.    Red Lobster does not have a category for decoration purchases in their cash paid outs system.  Plaintiff Fountain reached out to Red Lobster Corporate (Revenue Accounting and Defendant Yoffee) on numerous occasions about the gaps in categorization. Defendant Yoffee lauded Plaintiff Fountain's efforts to determine the correct designation. All purchases on the part of the restaurant are vetted by Corporate and Plaintiff Fountain's restaurant was always in compliance.

150.    The anonymous letter claimed, in part, that Plaintiff was hosting private parties for her personal friends. To substantiate this allegation, pictures attached to that letter depict primarily black customers—insinuating that because the customers were black that they must be Plaintiff Fountain's friends.

151.    Defendant Red Lobster then incorporated the anonymous email's claim as part of its rationale for terminating Plaintiff.  Defendant Red Lobster claimed that Plaintiff hosted three

"unapproved parties," but only cited parties attended by black customers as in violation of "company policy."

152.    Specifically, Red Lobster falsely accused Plaintiff of violating "party planning policies" as it related to the Halloween Party, the Ugly Sweater Party, and the New Year's party. Red Lobster claimed Plaintiff needed Corporate approval to host parties.

    a.   At all pertinent times herein, Red Lobster did not have a policy requiring General Managers to seek Corporate approval prior to hosting events.

    b.   Plaintiff even asked Defendant Yoffee if she needed Corporate approval before hosting events.  Defendant Yoffee explicitly said that was not necessary.

    c.   Plaintiff included Defendant Yoffee as part of the booking process for all events as a courtesy and for the sake of full transparency.  Plaintiff even invited Defendant Yoffee to the events.

    d.   Plaintiff fully informed Defendant Yoffee of each event via text message and Defendant Yoffee encouraged the events.

153.    The anonymous email and Red Lobster falsely alleged that Plaintiff failed to comply with the special hours policy—i.e., that customers were staying at the restaurant afterhours.

    a.   Plaintiff explicitly asked Defendant Yoffee if customers must leave the restaurant at a certain time.  Defendant Yoffee said, via text message, "You're the GM. What do you think?" Plaintiff texted that as long as the customers were paying, they could stay. Defendant Yoffee did not reply.

    b.   Further, during events, Plaintiff texted Defendant Yoffee updates regarding the event, including when the events were ending and if the event was ending after hours.

    c.   Defendant Yoffee never took issue with any of these events.

154.    The anonymous email and Red Lobster falsely accused Plaintiff of throwing her own birthday party and using company funds to sponsor the event.

    a.   Two other customers, who Plaintiff did not know personally, booked the Lobster Lounge on the date of her birthday to celebrate their own birthdays. Plaintiff treated the event like any other event—booked the DJ, ordered cakes, and planned accordingly.

    b.   Plaintiff purchased materials for the events in accordance with Red Lobster policy and properly submitted all receipts to Corporate.

    c.   Prior to her birthday, Plaintiff learned that the staff might be planning to celebrate her fiftieth birthday at the Elmira Red Lobster and reached out to Defendant Yoffee for guidance.

    d.   Defendant Yoffee stated that Plaintiff and staff could celebrate but warned her that employees were out to get her and that she should be careful. Plaintiff heeded his warning.

    e.   On the date of her birthday, Plaintiff was off and not scheduled to work.  However, she stopped by the restaurant to ensure that her employees were prepared for the events.  Plaintiff returned to the restaurant later that evening to say hello to the staff. Customers learned it was Plaintiff's fiftieth birthday and asked her to join in the festivities. Plaintiff made a brief appearance and did not consume alcohol.

    f.   Plaintiff's employees purchased Plaintiff Fountain a cake.

    g.   Plaintiff Fountain texted a picture of the event to Defendant Yoffee, to which he replied, "Very happy for you Miquelle! Enjoy."

155.    Red Lobster falsely alleged Plaintiff violated Corporate policy when she hired DJs for specific events.

    a.   Red Lobster has no such policy and Defendant Yoffee was fully aware and Plaintiff had previously held a range of other parties that included music of all kinds.

    b.   Notably, Defendant Red Lobster only took issue with events where hip-hop music was played and where black customers were in attendance.

156.    Defendants were fully aware of all events and Plaintiff Fountain was never reprimanded after any of these events. Instead, she was lauded for her sales achievements.

157.    Red Lobster falsely alleged Plaintiff violated social media policy.

    a.   At all pertinent times herein, Defendant Red Lobster had no social media policy.

    b.   However, Defendant Red Lobster urged General Managers to communicate with customers across social media.

    c.   Plaintiff Fountain sought to launch a Facebook page for the Elmira Red Lobster and inquired with Corporate.  Red Lobster informed her that there was only a national Facebook page available, though it were working on developing local Red Lobster social media presence.

    d.   Plaintiff proposed a Lobster Lounge Facebook page instead and it was approved by Defendant Yoffee.  Plaintiff played no part in setting up or maintaining the page.

16

158.   The anonymous email and Defendant Red Lobster falsely accused Plaintiff Fountain of violating alcohol policies.

    a.   Plaintiff in no way violated such policies.  Defendant Yoffee's "investigation" did not reveal a single firsthand account of such violations.

    b.   In fact, Defendant Yoffee threatened a bartender's job if that bartender did not lie about Plaintiff's violation of such policies.

159.   The anonymous email and Defendant Red Lobster accused Plaintiff of stealing a bottle of wine.

    a.   Plaintiff never stole wine.

    b.   Plaintiff purchased a bottle of wine pursuant to a Red Lobster competition.  Had Plaintiff been given the opportunity during the investigation, she would have presented receipts proving proof of purchase.

    c.   The egregious and unfounded allegation of theft, without any support or proper investigation, and with Plaintiff's unblemished record with Red Lobster, is unfathomable and seething with racial animus.

160.   The anonymous email and Red Lobster falsely alleged Plaintiff violated Red Lobster's attendance policy.

    a.   Plaintiff never violated the policy and never failed to appear for a shift.

    b.   The new manager who was sabotaging truck orders consistently failed to ensure the restaurant was properly supplied.  Almost every shift, various employees would text Plaintiff asking her to pick up an assortment of missing items.  To acquire the appropriate supplies, Plaintiff had to travel to the nearest Red Lobster, over an hour away (*see* ¶ 84).

    c.   Plaintiff was only late when she had to pick up items for the restaurant, always ensured the staff was aware and that shifts were properly covered.

    d.   Defendant Yoffee was aware of this and never raised it as a concern.

161.   Defendant Red Lobster did not have legitimate job-related reasons for its actions regarding Plaintiff Fountain.

162.   Defendant Red Lobster had no reasonable grounds for terminating Plaintiff Fountain.

163.   Defendant Red Lobster failed to conduct a legitimate investigation into the allegations spearheaded by employees who knowingly discriminated against Plaintiff Fountain on the basis of her race/sex.

### *Dispute Resolution Policy*

164.   Upon information and belief, Defendant Red Lobster has a dispute resolution policy setting forth steps an employee should take if they feel they have been the victim of discrimination ("Open Door" policy).

165.   Upon information and belief, Plaintiff signed only a portion of the dispute resolution policy.

166.   To the extent that the dispute resolution policy applies, if at all, it would only apply up until the date of her wrongful termination.

167.   Defendant is bound to their own dispute resolution agreement.

168.   Plaintiff reported the hostile work environment to her supervisor(s), but Red Lobster took no corrective action pursuant to the dispute resolution policy.

169.   Defendant breached their own dispute resolution policy when they failed to follow the prescribed procedures.

170.   As a result of the breach, to the extent that Plaintiff is bound to such a policy, she is no longer bound.

171.   Further, Plaintiff is not bound to an alternative dispute resolution policy pursuant to New York Civil Practice Law 7515.

172.   Upon information and belief, remedies provided through Red Lobster's alternative dispute resolution are different than those available in a judicial forum.

173.   The delegation provision in Red Lobster's dispute resolution policy is unconscionable.

174.   Further, given that Plaintiff was unable to review alleged evidence against her during the purported investigation and was terminated shortly thereafter, it was impossible for plaintiff to avail herself of any alternative dispute resolution process post-termination.

## AS AND FOR THE FIRST CAUSE OF ACTION AGAINST RED LOBSTER
### *HOSTILE WORK ENVIRONMENT ON ACCOUNT OF RACE UNDER TITLE VII (42 U.S.C. § 2000e-2, et seq.)*

175.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

176.    Plaintiff is black female and identifiable as such.  Accordingly, Plaintiff is in a class of persons protected under 42 U.S.C. § 2000e, *et seq.*

177.    At all times pertinent herein, Red Lobster is an employer as defined in Title VII of the Civil Rights Act (42 U.S.C. § 2000e).

178.    At all times pertinent herein, and as detailed above, Plaintiff was continually harassed on the basis of her race while employed by Red Lobster. This harassment was unwelcome by Plaintiff.[8]

179.    At all times pertinent herein, Red Lobster tolerated, condoned, and/or participated in the above-described actions and omissions against Plaintiff because she is a black woman, and a member of a protected class.

180.    Further, as a result of the foregoing, Red Lobster created a hostile work environment that was permeated with discriminatory intimidation, ridicule and insult; was intimidating, offensive and abusive to reasonable people because of the severe and pervasive discrimination Plaintiff endured.

181.    Plaintiff perceived the environment to be abusive, hostile, and offensive.

182.    As a result of the foregoing, Red Lobster condoned the harassment and hostile work environment on the basis of her race by failing to investigate Plaintiff's complaints and prevent discrimination, inadequately investigating the harassing allegations launched against Plaintiff, and ultimately terminating Plaintiff.

183.    All alleged incidents are sufficiently related in nature and severity and are part of the same hostile work environment practice.

184.    As a result of the foregoing, Red Lobster otherwise engaged in unlawful practices as defined in Title VII.

185.    As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses,

---

[8] Though the causes of action in the Complaint are bisected (race and sex), Plaintiff Fountain's identity as a Black woman is inextricably linked and it is alleged herein that Plaintiff has experienced intersectional discrimination.

past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

186.    As a result of the foregoing, Plaintiff demands judgment against Red Lobster in the amount of $5,000,000.00.

187.    As a result of the foregoing, punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

188.    Under Title VII, Plaintiff is entitled to an award of attorneys' fees and costs, including but not limited to expert witness fees.


## AS AND FOR THE SECOND CAUSE OF ACTION AGAINST RED LOBSTER AND JOE YOFFEE
### *HOSTILE WORK ENVIRONMENT ON ACCOUNT OF RACE UNDER NEW YORK STATE EXECUTIVE LAW § 296*

189.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

190.    Red Lobster is an employer within the meaning of New York State Executive Law § 292.

191.    New York State Executive Law § 296(1)(a) provides that: It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, color, religion, military status, sex, disability, predisposing genetic characteristics, marital status, familial status or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

192.    While Plaintiff was employed at Elmira Red Lobster, Defendant Yoffee was her supervisor.

193.    At all times pertinent herein, and as detailed above, Plaintiff was continually harassed on the basis of her race while employed by Red Lobster. This harassment was unwelcome by Plaintiff.[9]

194.    At all times pertinent herein, Defendants tolerated, condoned, and/or participated in the above-described actions and omissions against Plaintiff because she is a black woman, and a member of a protected class.

---

[9] Though the causes of action in the Complaint are bisected (race and sex), Plaintiff Fountain's identity as a Black woman is inextricably linked and it is alleged herein that Plaintiff has experienced intersectional discrimination.

195.    Further, as a result of the foregoing, Red Lobster Defendants created a hostile work environment that was permeated with discriminatory intimidation, ridicule and insult; was intimidating, offensive and abusive to reasonable people because of the severe and pervasive discrimination Plaintiff endured.

196.    Plaintiff perceived the environment to be abusive, hostile, and offensive.

197.    All alleged incidents are sufficiently related in nature and severity and are part of the same hostile work environment practice.

198.    Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

199.    As a result of the foregoing, Defendants otherwise engaged in unlawful practices as defined in New York State Executive Law § 296.

200.    As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

201.    As a result of the foregoing, Plaintiff was unable, despite reasonable efforts, to find comparable employment.

202.    As a result of the foregoing, Plaintiff demands judgment against Red Lobster in the amount of $5,000,000.00.

203.    As a result of the foregoing, pursuant to New York Executive Law § 297(9) punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

204.    Under New York Executive Law § 297(10), Plaintiff is entitled to an award of attorneys' fees and costs.

## AS AND FOR THE THIRD CAUSE OF ACTION AGAINST RED LOBSTER
### *RACE DISCRIMINATION UNDER TITLE VII (42 U.S.C. § 2000e-2, et seq.)*

205.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

206.    Plaintiff is a black female and identifiable as such.  Accordingly, Plaintiff is in a class of persons protected under 42 U.S.C. § 2000e, *et seq.*

207.    At all times pertinent herein, Red Lobster is an employer as defined in Title VII of the Civil Rights Act (42 U.S.C. § 2000e).

208.    At all times pertinent herein, Plaintiff was qualified for her position.

209.    At all times pertinent herein, Red Lobster, via its employees and representatives, acted knowingly, intentionally, recklessly and/or with wanton disregard for the rights and privileges of Plaintiff to have equal employment and non-discriminatory treatment under the law.

210.    At all times pertinent herein, Red Lobster tolerated, condoned, and/or participated in the above-described actions and omissions against Plaintiff because she is a black woman, and a member of a protected class.

211.    As a result of the foregoing, Red Lobster discriminated against Plaintiff on the basis of Plaintiff's race, and discriminated against Plaintiff with respect to, *inter alia*, compensation, terms, conditions, or privileges of employment because of Plaintiff's race.[10]

212.    Further, Red Lobster limited, segregated, and/or classified Plaintiff on the basis of her race, and as a result of that classification, it adversely affected and/or impacted her employment at Red Lobster up to and including wrongful discharge.

213.    As a result of the foregoing, Red Lobster discriminated against Plaintiff by terminating her on the basis of her race which deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her race.

214.    Red Lobster treated white employees more favorably than Plaintiff.

215.    Red Lobster's rationale for termination was pretextual.

216.    As a result of the foregoing, Red Lobster otherwise engaged in unlawful practices as defined in Title VII.

217.    As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

218.    As a result of the foregoing, Plaintiff demands judgment against Red Lobster in the amount of $5,000,000.00.

---

[10] Though the causes of action in the Complaint are bisected (race and sex), Plaintiff Fountain's identity as a Black woman is inextricably linked and it is alleged herein that Plaintiff has experienced intersectional discrimination.

219.    As a result of the foregoing, punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

220.    Under Title VII, Plaintiff is entitled to an award of attorneys' fees and costs, including but not limited to expert witness fees.

## AS AND FOR THE FOURTH CAUSE OF ACTION AGAINST RED LOBSTER AND JOE YOFFEE
### *RACE DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW § 296*

221.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

222.    Red Lobster is an employer within the meaning of New York State Executive Law § 292.

223.    New York State Executive Law § 296(1)(a) provides that: It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, color, religion, military status, sex, disability, predisposing genetic characteristics, marital status, familial status or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

224.    While Plaintiff was employed at Elmira Red Lobster, Defendant Yoffee was her supervisor.

225.    At all pertinent times herein, Plaintiff was qualified for her position.

226.    At all times pertinent herein, Defendants, via its employees and representatives, acted knowingly, intentionally, recklessly and/or with wanton disregard for the rights and privileges of Plaintiff to have equal employment and non-discriminatory treatment under the law.

227.    At all pertinent times herein, Defendants tolerated, condoned, and/or participated in the above-described actions and omissions against Plaintiff because she is a black woman, and a member of a protected class.

228.    As a result of the foregoing, Defendants discriminated against Plaintiff on the basis of Plaintiff's race, and discriminated against Plaintiff with respect to, *inter alia*, compensation, terms, conditions, or privileges of employment because of Plaintiff's race.

229.    Red Lobster discharged Plaintiff because of her race.  Further, Defendants limited, segregated, and/or classified Plaintiff on the basis of her race, and as a result of that classification, it adversely affected and/or impacted her employment at Red Lobster up to and including wrongful discharge.

230.    Defendants' rationale for termination was pretextual.

231.    Defendants treated white employees more favorably than Plaintiff.

232.    Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

233.    As a result of the foregoing, Defendants otherwise engaged in unlawful practices as defined in New York State Executive Law § 296.

234.    As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

235.    As a result of the foregoing, Plaintiff was unable, despite reasonable efforts, to find comparable employment.

236.    As a result of the foregoing, Plaintiff demands judgment against Red Lobster in the amount of $5,000,000.00.

237.    As a result of the foregoing, pursuant to New York Executive Law § 297(9) punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

238.    Under New York Executive Law § 297(10), Plaintiff is entitled to an award of attorneys' fees and costs.


### AS AND FOR THE FIFTH CAUSE OF ACTION AGAINST RED LOBSTER
### *RETALIATION (42 U.S.C. § 2000e-3, et seq)*

239.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

240.    As identified in the foregoing, Plaintiff repeatedly and expressly complained to Red Lobster about unlawful employment practices, including reporting the racism and sexism she was experiencing in the Red Lobster work environment.

241.    Further, Plaintiff informed Red Lobster and Defendant Yoffee that the anonymous email that contained false allegations against her was motivated by sex/racial animus. Plaintiff was immediately told to leave the Elmira Red Lobster and was terminated days later.

242.    By reporting such information to Red Lobster, Plaintiff was engaging in protected activities under Title VII.

243.    Red Lobster's termination of Plaintiff because she engaged in protected activities constitutes wrongful retaliation under Title VII.

244.    By the foregoing actions and omissions, Red Lobster retaliated against Plaintiff for opposing discrimination and engaging in a protected activity under Title VII.

245.    Red Lobster's rationale for termination was pretextual.

246.    As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

247.    As a result of the foregoing, Plaintiff demands judgment against Red Lobster in the amount of $5,000,000.00.

248.    As a result of the foregoing, punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

249.    Under Title VII, Plaintiff is entitled to an award of attorneys' fees and costs, including but not limited to expert witness fees.

## AS AND FOR THE SIXTH CAUSE OF ACTION AGAINST RED LOBSTER AND JOE YOFFEE
### *RETALIATION UNDER NEW YORK STATE EXECUTIVE LAW § 296*

250.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

251.    Red Lobster is an employer within the meaning of New York State Executive Law § 292.

252.    New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because she has opposed any practices forbidden under this article."

253.    As identified in the foregoing, Plaintiff repeatedly and expressly complained to Defendants about unlawful employment practices, including reporting the racism and sexism she was experiencing in the Red Lobster work environment.

254.    Further, Plaintiff informed Red Lobster and Defendant Yoffee that the anonymous email that contained false allegations against her was motivated by sex/racial animus. Plaintiff was immediately told to leave the Elmira Red Lobster and was terminated days later.

255.    By reporting such information to Red Lobster, Plaintiff was engaging in protected activities under New York State Executive Law § 296.

256.    Red Lobster's termination of Plaintiff because she engaged in protected activities constitutes wrongful retaliation under New York State Executive Law § 296.

257.    By the foregoing actions and omissions, Red Lobster retaliated against Plaintiff for opposing discrimination and engaging in a protected activity under New York State Executive Law § 296.

258.    Red Lobster's rationale for termination was pretextual.

259.    Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

260.    As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

261.    As a result of the foregoing, Plaintiff was unable, despite reasonable efforts, to find comparable employment.

262.    As a result of the foregoing, Plaintiff demands judgment against Red Lobster in the amount of $5,000,000.00.

263.    As a result of the foregoing, pursuant to New York Executive Law § 297(9) punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

264.    Under New York Executive Law § 297(10), Plaintiff is entitled to an award of attorneys' fees and costs.

**AS AND FOR THE SEVENTH CAUSE OF ACTION AGAINST RED LOBSTER AND JOE YOFFEE**
***INTENTIONAL DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND RETALIATION UNDER 42 U.S.C. § 1981***

265.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

266.    42 U.S.C. § 1981 protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race.

267.    Plaintiff is a black woman.

268.    Plaintiff was an employee of Red Lobster pursuant to an employment contract and had rights under the existing contract that she wishes to make and enforce.

269.    Red Lobster intentionally discriminated against Plaintiff because of her race.

270.    Red Lobster terminated Plaintiff because of her race.

271.    Plaintiff was subjected to continued harassment as described in the foregoing by Red Lobster and its employees and this harassment was motivated by Plaintiff's race. This harassment was unwelcome by Plaintiff.

272.    The conduct was so severe and pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and abusive.

273.    Plaintiff believed her work environment to be hostile or abusive as a result of the continued harassment.

274.    Management level employees, including Defendant Yoffee, knew or should have known of the abusive conduct since management had enough information to raise the probability of racial harassment in the mind of a reasonable employer.

275.    The continued harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

276.    Defendant Red Lobster and Defendant Joe Yoffee failed to take any prompt remedial action.

277.    As identified in the foregoing, Plaintiff repeatedly and expressly opposed the discrimination to Red Lobster and Defendant Yoffee and on numerous occasions reported the harassment and racism she was experiencing in the Red Lobster work environment.

278.    Further, Plaintiff informed Red Lobster and Defendant Yoffee that the anonymous email that contained false allegations against her was motivated by racial animus. Plaintiff was immediately told to leave the Elmira Red Lobster and was terminated days later.

279.    By reporting such information to Red Lobster and Defendant Yoffee, Plaintiff was engaging in protected activities under § Red Lobster's rationale for termination was pretextual.

280.    Plaintiff was terminated because she reported the harassment and racism.

281.     By the foregoing actions and omissions, Red Lobster retaliated against Plaintiff for opposing discrimination and engaging in a protected activity under § 1981.

282.     Red Lobster's rationale for termination was pretextual.

283.     As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

284.     As a result of the foregoing, Plaintiff was unable, despite reasonable efforts, to find comparable employment.

285.     As a result of the foregoing, Plaintiff demands judgment against Red Lobster in the amount of $5,000,000.00.

286.     As a result of the foregoing, punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

287.     Plaintiff is entitled to an award of attorneys' fees and costs.

**AS AND FOR THE EIGHTH CAUSE OF ACTION AGAINST RED LOBSTER**
***HOSTILE WORK ENVIRONMENT ON ACCOUNT OF SEX UNDER TITLE VII (42 U.S.C. § 2000e-2, et seq.)***

288.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

289.     Plaintiff is a black female and identifiable as such.  Accordingly, Plaintiff is in a class of persons protected under 42 U.S.C. § 2000e, *et seq.*

290.     At all times pertinent herein, Red Lobster is an employer as defined in Title VII of the Civil Rights Act (42 U.S.C. § 2000e).

291.     Plaintiff's identity as a black woman are inextricably linked.[11]

292.     At all times pertinent herein, and as detailed above, Plaintiff was continually harassed on the basis of her sex while employed by Red Lobster. This harassment was unwelcome by Plaintiff.

---

[11] Though the causes of action in the Complaint are bisected (race and sex), Plaintiff Fountain's identity as a Black woman is inextricably linked and it is alleged herein that Plaintiff has experienced intersectional discrimination.

293.     At all times pertinent herein, Red Lobster tolerated, condoned, and/or participated in the above-described actions and omissions against Plaintiff because she is a black woman, and a member of a protected class.

294.     Further, as a result of the foregoing, Red Lobster created a hostile work environment that was permeated with discriminatory intimidation, ridicule and insult; was intimidating, offensive and abusive to reasonable people because of the severe and pervasive discrimination Plaintiff endured.

295.     Plaintiff perceived the environment to be abusive, hostile, and offensive.

296.     All above alleged incidents are sufficiently related in nature and severity and are part of the same hostile work environment practice.

297.     As a result of the foregoing, Red Lobster condoned the harassment and hostile work environment on the basis of her sex by failing to investigate Plaintiff's complaints and prevent discrimination, inadequately investigating the harassing allegations launched against Plaintiff, and ultimately terminating Plaintiff.

298.     As a result of the foregoing, Red Lobster otherwise engaged in unlawful practices as defined in Title VII.

299.     As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

300.     As a result of the foregoing, Plaintiff demands judgment against Red Lobster in the amount of $5,000,000.00.

301.     As a result of the foregoing, punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

302.     Under Title VII, Plaintiff is entitled to an award of attorneys' fees and costs, including but not limited to expert witness fees.

**AS AND FOR THE NINTH CAUSE OF ACTION AGAINST RED LOBSTER AND JOE YOFFEE**
***HOSTILE WORK ENVIRONMENT ON ACCOUNT OF SEX UNDER NEW YORK EXECUTIVE LAW § 296***

303.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

304.    Red Lobster is an employer within the meaning of New York State Executive Law § 292.

305.    New York State Executive Law § 296(1)(a) provides that: It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, color, religion, military status, sex, disability, predisposing genetic characteristics, marital status, familial status or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

306.    While Plaintiff was employed at the Elmira Red Lobster, Defendant Yoffee was her supervisor.

307.    At all times pertinent herein, and as detailed above, Plaintiff was continually harassed on the basis of her sex while employed by Red Lobster. This harassment was unwelcome by Plaintiff.[12]

308.    At all times pertinent herein, Defendants tolerated, condoned, and/or participated in the above-described actions and omissions against Plaintiff because she is a black woman, and a member of a protected class.

309.    Further, as a result of the foregoing, Defendants created a hostile work environment that was permeated with discriminatory intimidation, ridicule and insult; was intimidating, offensive and abusive to reasonable people because of the severe and pervasive discrimination Plaintiff endured.

310.    Plaintiff perceived the environment to be abusive, hostile, and offensive.

311.    All alleged incidents are sufficiently related in nature and severity and are part of the same hostile work environment practice.

312.    As a result of the foregoing, Red Lobster condoned the harassment and hostile work environment on the basis of her sex by failing to investigate Plaintiff's complaints and prevent discrimination, inadequately investigating the harassing allegations launched against Plaintiff, and ultimately terminating Plaintiff.

313.    Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

---

[12] Though the causes of action in the Complaint are bisected (race and sex), Plaintiff Fountain's identity as a Black woman is inextricably linked and it is alleged herein that Plaintiff has experienced intersectional discrimination.

314.     As a result of the foregoing, Defendants otherwise engaged in unlawful practices as defined in New York State Executive Law § 296.

315.     As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

316.     As a result of the foregoing, Plaintiff was unable, despite reasonable efforts, to find comparable employment.

317.     As a result of the foregoing, Plaintiff demands judgment against Defendants in the amount of $5,000,000.00.

318.     As a result of the foregoing, pursuant to New York Executive Law § 297(9) punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

319.     Under New York Executive Law § 297(10), Plaintiff is entitled to an award of attorneys' fees and costs.

### AS AND FOR THE TENTH CAUSE OF ACTION AGAINST RED LOBSTER
### *SEX DISCRIMINATION UNDER TITLE VII (42 U.S.C. § 2000e-2, et seq.)*

320.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

321.     Plaintiff is a black female and identifiable as such.  Accordingly, Plaintiff is in a class of persons protected under 42 U.S.C. § 2000e, *et seq.*

322.     At all times pertinent herein, Red Lobster Defendants are employers as defined in Title VII of the Civil Rights Act (42 U.S.C. § 2000e).

323.     At all times pertinent herein, Plaintiff was qualified for her position.

324.     At all times pertinent herein, Red Lobster, via its employees and representatives, acted knowingly, intentionally, recklessly and/or with wanton disregard for the rights and privileges of Plaintiff to have equal employment and non-discriminatory treatment under the law.

325.     At all times pertinent herein, Red Lobster tolerated, condoned, and/or participated in the above-described actions and omissions against Plaintiff because she is a black woman, and a member of a protected class.

326.     Red Lobster treated male employees more favorably than Plaintiff.

327.    As a result of the foregoing, Red Lobster discriminated against Plaintiff on the basis of Plaintiff's sex, and discriminated against Plaintiff with respect to, *inter alia*, compensation, terms, conditions, or privileges of employment because of Plaintiff's sex.[13]

328.    Further, Red Lobster limited, segregated, and/or classified Plaintiff on the basis of her sex, and as a result of that classification, it adversely affected and/or impacted her employment at Red Lobster up to and including wrongful discharge.

329.    As a result of the foregoing, Red Lobster discriminated against Plaintiff by terminating her on the basis of her sex which deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her sex.

330.    Red Lobster's rationale for termination was pretextual.

331.    As a result of the foregoing, Red Lobster otherwise engaged in unlawful practices as defined in Title VII.

332.    As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

333.    As a result of the foregoing, Plaintiff demands judgment against Red Lobster in the amount of $5,000,000.00.

334.    As a result of the foregoing, punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

335.    Under Title VII, Plaintiff is entitled to an award of attorneys' fees and costs, including but not limited to expert witness fees.

**AS AND FOR THE ELEVENTH CAUSE OF ACTION AGAINST RED LOBSTER AND JOE YOFFEE**
*SEX DISCRIMINATION UNDER NEW YORK EXECUTIVE LAW § 296*

336.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

337.    Red Lobster is an employer within the meaning of New York State Executive Law § 292.

---

[13] Though the causes of action in the Complaint are bisected (race and sex), Plaintiff Fountain's identity as a Black woman is inextricably linked and it is alleged herein that Plaintiff has experienced intersectional discrimination.

338.    New York State Executive Law § 296(1)(a) provides that: It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, color, religion, military status, sex, disability, predisposing genetic characteristics, marital status, familial status or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

339.    While Plaintiff was employed at Elmira Red Lobster, Defendant Yoffee was her supervisor.

340.    At all times pertinent herein, Plaintiff was qualified for her position.

341.    At all times pertinent herein, Red Lobster, via its employees and representatives, acted knowingly, intentionally, recklessly and/or with wanton disregard for the rights and privileges of Plaintiff to have equal employment and non-discriminatory treatment under the law.

342.    At all times pertinent herein, Defendants tolerated, condoned, and/or participated in the above-described actions and omissions against Plaintiff because she is a black woman, and a member of a protected class.

343.    Defendants treated male employees more favorably than Plaintiff.

344.    As a result of the foregoing, Defendants discriminated against Plaintiff on the basis of Plaintiff's sex, and discriminated against Plaintiff with respect to, *inter alia*, compensation, terms, conditions, or privileges of employment because of Plaintiff's sex.[14]

345.    Further, Defendants limited, segregated, and/or classified Plaintiff on the basis of her sex, and as a result of that classification, it adversely affected and/or impacted her employment at Red Lobster up to and including wrongful discharge.

346.    As a result of the foregoing, Defendants discriminated against Plaintiff by terminating her on the basis of her sex which deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her race.

347.    Defendants' rationale for termination was pretextual.

348.    As a result of the foregoing, Defendants unlawfully discriminated against Plaintiff and otherwise deprived her of her rights under New York State's Human Rights Law.

349.    Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

---

[14] Though the causes of action in the Complaint are bisected (race and sex), Plaintiff Fountain's identity as a Black woman is inextricably linked and it is alleged herein that Plaintiff has experienced intersectional discrimination.

350.    As a result of the foregoing, Defendants otherwise engaged in unlawful practices as defined in New York State Executive Law § 296.

351.    As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

352.    As a result of the foregoing, Plaintiff was unable, despite reasonable efforts, to find comparable employment.

353.    As a result of the foregoing, Plaintiff demands judgment against Red Lobster in the amount of $5,000,000.00.

354.    As a result of the foregoing, pursuant to New York Executive Law § 297(9) punitive damages are warranted and proper, and the Plaintiff is entitled to an award thereof.

355.    Under New York Executive Law § 297(10), Plaintiff is entitled to an award of attorneys' fees and costs.

### AS AND FOR THE TWELFTH CAUSE OF ACTION AGAINST RED LOBSTER
### *BREACH OF CONTRACT*[15]

356.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

357.    To the extent that there was an applicable and enforceable alternative dispute resolution policy, Plaintiff repeatedly reported hostility in the work environment to management.

358.    After the anonymous email was sent to management, Plaintiff reported that she was being targeted because of her race and sex.

359.    Accordingly, Plaintiff complied with the terms of the alternative dispute resolution policy.

---

[15] As a result of the breach, to the extent that Plaintiff is bound to such a policy, she is no longer bound.  Further, Plaintiff is not bound to an alternative dispute resolution policy pursuant to New York Civil Practice Law 7515. Upon information and belief, remedies provided through Red Lobster's alternative dispute resolution are different than those available in a judicial forum. The delegation provision in Red Lobster's dispute resolution policy is unconscionable. Further, given that Plaintiff was unable to review alleged evidence against her during the purported investigation and was terminated shortly thereafter, it was impossible for plaintiff to avail herself of any alternative dispute resolution process post-termination.

360.    Defendant failed to comply with the terms of the alternative dispute resolution policy.

361.    This breach was material.

362.    As a result of the foregoing, Plaintiff suffered escalating abuse in the workplace and ultimately termination.

363.    As a result of the foregoing, Plaintiff has been damaged in the premises including but not limited to: pain and suffering; disruption of family and social life and related personal circumstances; loss of job security; inconvenience and related mental anguish; economic loss, including loss of vocational reputation and status, benefits, promotional opportunities, bonuses, past and future earnings and other employment benefits; impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation anguish; and otherwise damaged in the premises.

364.    As a result of the foregoing, Plaintiff was unable, despite reasonable efforts, to find comparable employment.

365.    As a result of the foregoing, is entitled to lost wages, consequential damages, and attorneys' fees and costs.

**WHEREFORE,** as a result of the foregoing, Plaintiff demands judgment against the Defendants in the amount to $5,000,000.00 on each individual cause of action (one through eleven); 200,000.00 for the twelfth cause of action; and for such other and further relief which to the Court is just and proper, including punitive damages, interest, and attorneys' fees and costs as may be recoverable by law.

DATED:   Ithaca, New York
        September 3, 2021

AUBREY D. HETZNECKER, ESQ.
ATTORNEYS FOR PLAINTIFF
SCHLATHER, STUMBAR, PARKS & SALK, LLP
Office and Post Office Address
200 East Buffalo Street
P.O. Box 353
Ithaca, New York 14851-0353
Phone: 607-273-2202
Fax: 607-273-4436